The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. That all the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times herein.
3. That Cigna Property and Casualty Companies, Inc. provided workers' compensation insurance coverage at the time of the accident or incident herein.
4. That plaintiff's average weekly wage at all relevant times herein was $697.41 per week.
5. That plaintiff's last day of employment with defendant-employer was April 21, 1994.
6. That the issues to be determined from this hearing are as follows:
 a) Whether plaintiff developed a compensable occupational disease as a result of her employment with defendant-employer?
 b) If so, to what, if any, benefits is she entitled to receive?
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was a forty-eight year old female with a date of birth of August 25, 1948.
2. Plaintiff began working for defendant-employer in 1979. She worked as a bake oven tender, washer tender and palletizer operator, spending over two-thirds of her time during the last ten years of her employment with defendant-employer as a palletizer. In the position of palletizer, plaintiff did not work at a station in the plant which used any chemicals.
3. Defendant-employer is an aluminum can manufacturing plant. A variety of chemicals, many of which may cause respiratory irritation with exposure, are used at various stages of the manufacturing process. The plant where plaintiff worked vents to the outside each process that uses chemicals, and in addition the plant has exhaust fans in the ceiling. The air quality surveys taken during the course of plaintiff's employment with defendant-employer tend to show that the manufacturing process used at the plant generated levels of chemical mist and vapors which were, for the most part, either non-detectable, or so far below the OSHA permissible exposure limits as to not be significant.
4. The plant in which plaintiff worked is an open design which allows circulation of any contaminants throughout the plant. Some of the chemicals used in the plant included formaldehyde, sulfuric acid, hydrofluoric acid, polyester melamine varnish, acrylic melamine varnish, water reducible spray liner, methyl ethyl ketone, necking lube 2, lube oil, DI lube, sodium hydroxide, hydrogen peroxide, triadine, duplicating fluid anhydrous, Sno-Flake, and 111-trichloroethane. All of these chemicals could be respiratory irritants.
5. During plaintiff's course of employment with defendant-employer, she was never overexposed to any of the above said chemicals, but it is her contention that she was exposed to continuous low levels of the chemicals used in the plant. There were not any studies performed that showed that plaintiff in whatever station she worked was exposed to any particular level of the chemicals, although there was a study performed in 1994 that indicated that airborne contaminants were diffused throughout the plant air.
6. As early as 1981, plaintiff began complaining of sinus congestion and wheezing, which she attributed to problems with seasonal allergies. In 1987, she began to experience repeated and prolonged bouts of viral bronchitis and upper respiratory infections, both of which were always associated with a dry, as opposed to productive, cough. At no point prior to seeing Dr. Landis in October 1995 did plaintiff mention to any doctor who treated her bronchitis that she attributed her breathing problems to exposure to chemicals at work. In 1992, Dr. Zeller placed her on Axid, a medication which is commonly used to treat esophageal reflux. In 1993, plaintiff began to experience left-sided thoracic back pain, which was worse when she was lying down at night on her left side. Plaintiff is allergic to aspirin.
7. Plaintiff was told by Dr. Hinson in 1984 that she had bronchitis and possible asthma. Plaintiff's condition is this matter is reactive airways disease or asthma as diagnosed by both Drs. Kelling and Landis.
8. Plaintiff last worked for defendant-employer on April 11, 1994. She took leave from April 11, 1994 to April 24, 1994. Prior to plaintiff leaving her employment with defendant-employer she had not indicated to defendant-employer that she thought that she had contracted asthma or any other respiratory problems as a result of her employment.
9. Plaintiff's condition worsened after she stopped working for defendant-employer.
10. Shortly after leaving defendant-employer, plaintiff opened a retail store in which she works five and a half days per week, and she has no difficulty in this position.
11. Plaintiff has been treated by a number of doctors for her respiratory problems over the years. She was informed in 1984, that she had bronchitis and she has received treatment for the same and other respiratory problems since that time.
12. Drs. Landis and Kelling agreed that plaintiff had reactive airway disease or asthma. They agreed that her job with defendant-employer placed her at an increase risk of developing this condition, but neither were able to say with any degree of certainty that her asthma was related to her job. When they were asked by plaintiff's counsel and given the facts as he saw them, both indicated that plaintiff's job with defendant-employer was the cause of the asthma. However, plaintiff's version of the facts are not the facts found in this case in that plaintiff did not tell either Dr. Landis or Dr. Kelling that she had been experiencing difficulties with her respiratory system back as far as 1981, along with some other facts. When both doctors were informed of the additional facts, they both changed their opinions to indicate that plaintiff's condition of asthma was not caused by her employment with defendant-employer or they indicated that they could not say what was the cause of plaintiff's asthma.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
Since plaintiff has failed to prove by the greater weight of the evidence that her asthma was either caused by her exposure to chemicals used by defendant-employer in the plant she worked or the chemicals was a significant contributing factor to the development of her asthma, she is not entitled to recover any workers' compensation benefits in this matter. N.C. Gen. Stat. § 97-53(13).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for benefits under the Workers' Compensation Act must under the law be and the same is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of August 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER